UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00150-GNS

GGNSC GREENSBURG, LLC
d/b/a GOLDEN LIVINGCENTER – GREEN HILL;
GOLDEN GATE NATIONAL SENIOR CARE, LLC;
GGNSC ADMINISTRATIVE SERVICES, LLC;
GGNSC HOLDINGS, LLC;
GGNSC EQUITY HOLDINGS, LLC;
GGNSC EQUITY HOLDINGS II, LLC;
GOLDEN GATE ANCILLARY, LLC; and
GGNSC CLINICAL SERVICES, LLC                                    PLAINTIFFS

v.

ANGELA MARIE SMITH, as Administratrix of the
ESTATE OF GENEVA ANN JANES, Deceased                            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel Arbitration (DN 5) and Defendant's Motion to Dismiss (DN 10). The motions have been fully briefed by the parties and are ripe for adjudication. For the reasons outlined below, the Motion to Compel Arbitration is **GRANTED IN PART** and **DENIED IN PART**, and the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

I.  **SUMMARY OF FACTS AND CLAIMS**

On June 24, 2003, Geneva Janes ("Janes") executed a general power of attorney instrument ("POA"). (Compl. Ex. C, DN 1-4). Under the terms of the POA, Janes designated Angela Marie Smith ("Smith") as her attorney-in-fact.

At or about the time of Janes' admission to Golden LivingCenter – Green Hill, which is a facility operated by Plaintiffs, Smith executed a document entitled "Alternative Dispute Resolution Agreement" ("Agreement") on Janes' behalf. (Compl. Ex. A, at 1-4, DN 1-2). The Agreement provides that "[t]he Parties agree that any disputes covered by this Agreement ('Covered Disputes') that may arise between them shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration." (Compl. Ex. A, at 1). The term "Covered Disputes" is defined as:

> any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law sitting in the state where Facility is located. Covered Disputes include but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

(Compl. Ex. A, at 2).

On June 14, 2017, Smith, as Administratrix of Janes' estate, filed a lawsuit in Green Circuit Court entitled *Smith v. GGNSC Greensburg, LLC et al.*, Civil Action No. 17-CI-00079 (the "State Court Action"). In the state court complaint, Smith asserted claims against Plaintiffs for, *inter alia*, negligence, medical negligence, and wrongful death. (Compl. Ex. B, ¶¶ 27-40, 63-66). Following the initiation of the State Court Action, Plaintiffs filed this action in federal court asserting jurisdiction under 28 U.S.C. § 1332(a) and Section 4 (9 U.S.C. § 4) of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. (Compl. ¶ 15, DN 1). Plaintiffs seek to enforce the Agreement executed by Janes' attorney-in-fact, and Smith has moved to dismiss this case on various bases. (Compl. ¶¶ 28-31; Pl.'s Mem. Supp. Mot. Compel Arbitration 3-21, DN 5-1; Def.'s Mem. Supp. Mot. Dismiss & Resp. Pl.'s Mot. Compel Arbitration 3-36, DN 10-1).

## II. DISCUSSION

In support of her motion to dismiss, Smith asserts various bases pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7). In particular, she raises the following arguments: (i) the Court lacks subject matter jurisdiction; (ii) Plaintiffs failed to join indispensable parties—namely nursing home personnel who are defendants in the State Court Action—as parties to this action; (iii) the Court should abstain from exercising jurisdiction based upon the *Colorado River* abstention doctrine; (iv) the Agreement is invalid and unenforceable; (v) the Agreement is unconscionable; and (vi) Plaintiffs' request for injunctive relief would violate the Anti-Injunction Act, 28 U.S.C. § 2283. (Def.'s Mem. Supp. Mot. Dismiss & Resp. Pl.'s Mot. Compel Arbitration 3-36, DN 10-1). These same arguments have been unsuccessfully raised in numerous other recent cases before this Court challenging the enforcement of arbitration agreements between nursing homes and its residents or the residents' estates.[1] *See GGNSC Louisville St. Matthews v. Grevious*, No. 3:16-cv-829-DJH, 2017 WL 3623805 (W.D. Ky. Aug. 23, 2017); *GGNSC Louisville St. Matthews, LLC v. Phillips*, No. 3:17-CV-00406-JHM, 2017 WL 3446181 (W.D. Ky. Aug. 10, 2017); *GGNSC Louisville Camelot, LLC v. Coppedge*, No. 3:16-CV-00834-TBR, 2017 WL 3430579 (W.D. Ky. Aug. 9, 2017); *GGNSC Louisville St. Matthews v. Madison*, No. 3:16-CV-00830-TBR, 2017 WL 2312699 (W.D. Ky. May 26, 2017); *GGNSC Louisville St. Matthews, LLC v. Saunders*, No. 3:17-cv-00185-CRS-CHL, 2017 WL 2196752 (W.D. Ky. May 18, 2017); *GGNSC Louisville Mt. Holly, LLC v. Turner*, No. 3:16-CV-00149-TBR, 2017 WL 537200 (W.D. Ky. Feb. 9, 2017); *GGNSC Louisville Mt. Holly LLC v. Stevenson*, No. 3:16CV-00423-JMH, 2016 WL 5867427 (W.D. Ky. Oct. 6, 2016); *Preferred*

---

[1] The Court notes that Smith has failed to cite to or in any way seek to distinguish the adverse decisions of this Court in which its counsel's law firm represented parties who unsuccessfully opposed arbitration.

*Care of Del. Inc. v. Estate of Hopkins*, No. 5:15-CV-00191-GNS-LLK, 2016 WL 3546407 (W.D. Ky. June 22, 2016); *Diversicare Highland, LLC v. Lee*, No. 3:15-CV-00836-GNS, 2016 WL 3512256 (W.D. Ky. June 21, 2016); *Golden Gate Nat'l Senior Care, LLC v. Fleshman*, No. 3:15-CV-00891-GNS, 2016 WL 3406159 (W.D. Ky. June 17, 2016); *Owensboro Health Facilities, L.P. v. Henderson*, No. 4:16CV-00002-JHM, 2016 WL 2853569 (W.D. Ky. May 12, 2016); *Riney v. GGNSC Louisville St. Matthews, LLC*, No. 3:16CV-00122-JHM, 2016 WL 2853568 (W.D. Ky. May 12, 2016); *GGNSC Louisville Mt. Holly, LLC v. Mohamed-Vall*, No. 3:16-cv-136-DJH, 2016 WL 9024811 (W.D. Ky. Apr. 6, 2016); *Preferred Care of Del., Inc. v. Crocker*, No. 5:15-CV-177-TBR, 2016 WL 1181786 (W.D. Ky. Mar. 24, 2016); *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-cv-902-DJH, 2016 WL 815295 (W.D. Ky. Feb. 29, 2016); *Sun Healthcare Grp., Inc. v. Dowdy*, No. 5:13-CV-00169-TBR, 2014 WL 790916 (W.D. Ky. Feb. 26, 2014); *Life Care Ctrs. of Am., Inc. v. Estate of Neblett*, No. 5:14-CV-00124-TBR, 2014 WL 5439623 (W.D. Ky. Oct. 22, 2014). *See also Preferred Care, Inc. v. Howell*, 187 F. Supp. 3d 796 (E.D. Ky. 2016); *GGNSC Frankfort, LLC v. Tracy*, No. CIV. 14-30-GFVT, 2015 WL 1481149 (E.D. Ky. Mar. 31, 2015).

After considering the arguments of the parties and the cases referenced above, the Court denies the motion to dismiss for the reasons set forth in *Estate of Neblett* and *Crocker*. In short, the Court finds that it has subject matter jurisdiction, and that the nursing home personnel are not indispensable parties to this action. *See Estate of Neblett*, 2014 WL 5439623, at *2-7; *Crocker*, 2016 WL 1181786, at *4-6. With regard to the specific circumstances here, the Court will address the issues of abstention, validity, unconscionability, and enforceability of the Agreement, as well as the inapplicability of the Anti-Injunction Act.

## A. *Colorado River* Abstention Doctrine

Smith asserts that the Court should abstain from exercising jurisdiction based on *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). In that case, the Supreme Court recognized that federal courts should sometimes abstain from exercising jurisdiction over an action involving "substantially the same issues and substantially the same parties as a parallel case in state court." *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F. Supp. 2d 609, 612 (E.D. Ky. 2010) (citing *Colorado River*, 424 U.S. at 817-21). Such abstention, however, should occur "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Great Earth Cos. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 813).

In determining whether abstention is warranted, this Court must consider the following factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Id.* (quoting *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001)). In the case *sub judice*, there is no property at issue, which renders the first factor irrelevant. As to the second factor, the two courthouses are approximately 65 miles apart, which the Court does not perceive as a significant inconvenience to the parties. The Court also believes that there is no danger of piecemeal litigation because the Court will compel arbitration as to the estate's claims only and enjoin Smith from pursuing those claims in state court. Although the state court action was filed first, neither court has reached the merits of the claim, which results in neither the fourth or

seventh factor weighing in favor of abstention. *See id.* at 887 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 450 U.S. 1, 21-22 (1983)). As to the fifth factor, the governing law is the FAA, and, under the sixth factor, neither the state court nor this Court is more likely to adequately protect Plaintiffs' rights, which renders that factor neutral. Finally, concurrent jurisdiction exists. Accordingly, the factors do not weigh in favor of abstention.

In arguing for abstention, Smith relies on the Sixth Circuit's decision in *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388 (6th Cir. 2017). (Def.'s Mem. Supp. Mot. Dismiss & Resp. Pls.' Mot Compel Arbitration 19). As counsel is well aware, however, this Court has previously distinguished *VanArsdale* because the trial court in that case had already held that the arbitration agreement was unenforceable. *See GGNSC Louisville Camelot, LLC v. Coppedge*, No. 3:16-CV-00834-TBR, 2017 WL 3430579, at *3 (W.D. Ky. Aug. 9, 2017). In the case *sub judice*, the parties have not made this Court aware of any such ruling by the Green Circuit Court, which distinguishes this case from *VanArsdale*. For these reasons, the Court will not abstain from exercising jurisdiction.

**B.** **<u>Interstate Commerce</u>**

Under the FAA, a written agreement to arbitrate concerning a dispute arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2). Smith asserts that the Agreement is invalid because it does not evidence a transaction involving interstate commerce. Specifically, Smith argues that "[t]he mere fact that the ADR Agreement asserts that it is a contract involving interstate commerce does not make it so." (Def.'s Mem. Supp. Mot. Dismiss & Resp. Pl.'s Mot. Compel Arbitration 20).

6

This argument, however, lacks merit. As this Court reasoned in *Turner*:

> The Supreme Court has interpreted the phrase "involving commerce" in the FAA as signaling the broadest permissible exercise of Congress' Commerce Clause power. Based upon that interpretation, this Court has found on multiple prior occasions that nursing home admission agreements implicate interstate commerce. In [*GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421 (W.D. Ky. Dec. 19, 2013)], this Court emphasized that while the nursing care may occur wholly within the borders of Kentucky, the food, medicine, medical, and other supplies all likely come from elsewhere and that it would be impracticable for the nursing home to procure all goods necessary for the daily operations purely through intrastate channels. The *Warner* Court also noted that, like here, Defendant's state court complaint alleged that foreign entities owned, operated, managed, controlled, and provided services for the nursing home.

*Id.* at 83 (internal citations omitted) (citation omitted). Because the present facts are indistinguishable from *Turner*, the Court concludes that the Agreement is a contract involving interstate commerce.

### C. **Personal Injury & Statutory Claims**

Whether the arbitration provision is enforceable first depends upon the authority of Janes' attorney-in-fact to bind any claims that she or her estate may have against Plaintiffs. In *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), the Kentucky Supreme Court noted:

> The scope of th[e] authority [granted to the attorney-in-fact] is thus left to the principal to declare, and generally that declaration must be express. . . . [E]ven a "comprehensive" durable power would not be understood as implicitly authorizing all the decisions a guardian might make on behalf of a ward. Rather, we have indicated that an agent's authority under a power of attorney is to be construed with reference to the types of transaction expressly authorized in the document and subject always to the agent's duty to act with the "utmost good faith."

*Ping*, 376 S.W.3d at 592 (citation omitted). The court further recognized the general rule that "[a]bsent authorization in the power of attorney to settle claims and disputes or some such express authorization addressing dispute resolution, authority to make such a waiver is not to be inferred lightly." *Id.* at 593.

7

Smith relies on the Kentucky Supreme Court's decision in *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015), in arguing that she lacked the authority to sign a binding arbitration agreement on Janes' behalf. (Def.'s Mem. Supp. Mot. Dismiss & Resp. Pl.'s Mot. Compel Arbitration 23-24). In that case, the court considered three different power-of-attorney instruments and held that only one of the three contained language broad enough to empower the attorney-in-fact to execute an arbitration agreement. *See Whisman*, 478 S.W.3d at 312. With regard to all three instruments, however, the Kentucky Supreme Court held that there was a lack of "a clear and convincing manifestation of the principal's intention" to waive the personal right to a trial by jury, which rendered the arbitration agreement unenforceable. *See id.* at 312-13, 328-29. For those reasons, the court held that the power-of-attorney instruments did not authorize the attorneys-in-fact to sign arbitration agreements and to waive the grantors' right to a jury trial. *See id.* at 330.

Subsequently, in *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421 (2017), the U.S. Supreme Court rejected the Kentucky Supreme Court's imposition of a more stringent requirement for POAs which evidenced a clear hostility towards arbitration provisions. *See id.* at 1426-28. As this Court noted in a recent decision, *Clark* "left open the possibility that one of the POAs at issue [in *Whisman*] could still be found insufficient . . . ." *Grevious*, 2017 WL 3623805, at *4 (citing *Clark*, 137 S. Ct. at 1429). Discussing the POAs at issue in *Whisman*, this Court explained:

> One (the "Clark POA") granted the attorney in fact "the power '[t]o draw, make, and sign in my name any and all checks, promissory notes, contracts, deeds or agreements; . . . and [g]enerally to do and perform for me and in my name all that I might do if present;' and '[t]o institute or defend suits concerning my property or rights.'" The Kentucky Supreme Court concluded that the latter provision did not convey the authority to bind the principal to arbitration. In contrast, the powers "to transact, handle, and dispose of all matters affecting [the principal] and/or [her] estate in any possible way" and "to do and perform for [her] in [her]

8

name all that [she] might if present" were deemed broad enough to encompass entering an arbitration agreement; the court found these provisions to be inadequate only insofar as they failed to expressly authorize waiver of the right to trial by jury.

*Grevious*, 2017 WL 3623805, at *4 (internal citations omitted) (citation omitted).

In the present case, the POA granted Smith the power:

> to act as [Janes'] attorney-in-fact with full power for [her] and in [her] name and stead, to make any contracts . . . [;] to retain, make and sign any and all . . . contracts or agreements; defend suits concerning [Janes'] property or rights, and generally do and perform for [her] and in [her] name all that [Janes] might do if present; and [Janes] hereby adopt[ed] and ratif[ied] all of the acts of [her] said attorney, done in pursuance of the power granted as fully as if [Janes] were present acting in [her] own proper person . . . .

(Compl. Ex. C, at 1). Similar to the POA discussed above, Janes' POA contains a broad, universal delegation of authority that implicitly authorized Smith to bind Janes to pursue any claims against Plaintiffs in arbitration. *See Grevious*, 2017 WL 3623805, at *4 (upholding the validity of virtually an identical power of attorney under *Whisman*). For these reasons, the POA is enforceable under the rationale of *Whisman*.

### D. Unconscionability

Smith also seeks dismissal of this action on the basis that the arbitration provision is unconscionable. (Def.'s Mem. Supp. Mot. Dismiss & Resp. Pl.'s Mot. Compel Arbitration 30-32). Under Kentucky law, "[t]he doctrine of unconscionability is recognized as a narrow exception to Kentucky's fundamental rule of enforcing validly executing contracts according to their terms." *Davis v. Glob. Client Sols., LLC*, 765 F. Supp. 2d 937, 940 (W.D. Ky. 2011) (citation omitted). To determine whether this doctrine precludes enforceability of the arbitration provision, the Court must conduct "a two step process—first, a review focused on the procedures surrounding the making of the arbitration clause (procedural unconscionability) and second, a

review of the substantive content of the arbitration clause (substantive unconscionability)."

*Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 575 (Ky. 2012) (citation omitted).

With regard to procedural unconscionability, this Court has noted:

> Procedural unconscionability, also known as unfair surprise . . . pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. The Supreme Court of Kentucky recently held that an arbitration clause was not procedurally unconscionable where: the clause was not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it, at least in its general import; and its effect is not such as to alter the principal bargain in an extreme or surprising way"

*Davis*, 765 F. Supp. 2d at 941 (internal quotation marks omitted) (internal citation omitted) (citation omitted). Smith maintains that, because the agreements were boilerplate and executed as part of the numerous documents signed during admission, the arbitration provisions are procedurally unconscionable. (Def.'s Mem. Supp. Mot. Dismiss & Resp. Pl.'s Mot. Compel Arbitration 25). The Court rejects these arguments. "That the ADR Agreement is a 'boiler-plate, pre-printed' document does not render it unconscionable." *Warner*, 2013 WL 6796421, at *9. A lengthy admissions process with numerous forms to execute does not arise to the level of unconscionability. *See Watkins*, 2016 WL 815295, at *6 ("[M]any situations—such as buying a house or a car, visiting the doctor, or starting a new job—involve a lengthy process in which an individual must complete a substantial amount of paperwork. This alone does not make a contract procedurally unconscionable.").

Likewise, the Agreement is not precluded by substantive unconscionability. As this Court has explained:

> Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. As for substantive unconscionability, courts consider the commercial

reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.

*Davis*, 765 F. Supp. 2d at 941 (internal quotation marks omitted) (internal citation omitted) (citation omitted). Smith maintains that the provisions were substantively unconscionable because of the gross disparity in bargaining power and the fact that the fees for pursuing arbitration were not disclosed. (Def.'s Mem. Supp. Mot. Dismiss & Resp. Pl.'s Mot. Compel Arbitration 31-32). These arguments also lack merit. A difference in bargaining power alone does not amount to unconscionability. *See Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001). From the Agreement itself, the arbitration provisions are not substantively unconscionable because: (i) the provisions are plainly stated; (ii) the implications are in bold type (including a notation that "**[t]his Arbitration Agreement [] governs important legal rights. Please read it carefully and fully before signing it.**"); (iii) the provisions are reciprocal and do not limit recovery by either party; (iv) the Agreement granted the resident the right to opt out of the arbitration provision within thirty days of execution of the Agreement; and (v) as disclosed by the Agreement, the resident's portion of the fee for arbitration was limited to $250.[2] (Compl. Ex. A, at 1-4). There is nothing in the record to otherwise support Smith's

---

[2] The Agreement further states:

> Where Resident initiates arbitration against Facility, the only fee required to be paid by Resident is $250, which is approximately equivalent to a court filing fee; all other fees and costs, including any remaining JAMS case management fees and professional fees for the arbitrator's services, shall be paid by Facility. Where Facility initiates arbitration, Facility will pay all fees and costs associated with the arbitration other than Resident's attorney fees, if any. The Parties shall bear their own costs and attorney's fees except that the arbitrator may, in the Award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.

(Compl. Ex. A, at 3).

naked assertion that arbitration fees are necessarily higher than litigating this dispute in court. Under these circumstances, the Court finds that there is no substantive unconscionability.

For these reasons, the doctrine of unconscionability does not preclude the enforcement of the arbitration provisions in this case. The motion to dismiss on this basis will be denied.

E. **Wrongful Death Claim**

A different outcome, however, results with respect to arbitration of the wrongful death claims. Under KRS 411.130, a wrongful death claim may be pursued by the decedent's personal representative, and state law specifies the beneficiaries of such claims. *See* KRS 411.130. *See also* KRS 411.140 (providing that a wrongful death claim survives the decedent's death and may be brought by the personal representative). Thus, under Kentucky law, the personal representative of the decedent has the legal duty to bring a wrongful death action even though the personal representative may not be a beneficiary entitled to recover for the decedent's death. *See Vaughn's Adm'r v. Louisville N.R. Co.*, 179 S.W.2d 441, 444 (Ky. 1944).

In *Pete v. Anderson*, 413 S.W.3d 291 (Ky. 2013), the Kentucky Supreme Court reiterated the premise that wrongful death claims belong to the statutory heirs of the decedent as opposed to the decedent's estate, explaining:

> [T]his Court's recent decision in *Ping* . . . puts to rest any dispute as to whether the statutory beneficiaries are the real parties in interest to a wrongful death action. In *Ping*, the administrator of the estate of a woman who had been a long-term care facility resident brought suit against the operators of the facility alleging negligence resulting in injuries causing the woman's death. Our opinion, which resolved the question of whether a decedent can bind his or her beneficiaries to arbitrate a wrongful death claim, examined the distinction between the wrongful death statute and the survival statute, KRS 411.140. We concluded that while a survival action is derivative of a personal injury claim which belongs to the estate, a wrongful death action is an independent claim belonging to the intended beneficiaries under KRS 411.130, a claim that "accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss." Based on the plain language of KRS 411.130 and our holding in *Ping*, we must reject Pete's contention that the wrongful death action belongs to the estate.

12

*Id.* at 300 (citations omitted) (footnote omitted). *Pete* did not deal with any arbitration issues. *See also Moore v. Citizens Bank of Pikeville*, 420 S.W.2d 669, 672 (1967) ("KRS 411.130 creates a cause of action for wrongful death. This is a statutory right of action which did not exist prior to the wrongful death but arises by reason thereof. It has been pointed out that the wrongful death action is not derivative. It is brought to compensate survivors for loss occasioned by the death and not to recover for injuries to the decedent. The cause is distinct from any that the deceased may have had if he had survived. The damage caused by the wrongful death begins with, and flows from, the death."). Instead, *Pete* clarifies that under Kentucky law, wrongful death claims belong to the statutory beneficiaries, not to the decedent's estate.

Recently, in *Richmond Health Facilities-Kenwood, LP v. Nichols*, 811 F.3d 192 (6th Cir. 2016), the Sixth Circuit addressed whether a decedent could contractually bind his heirs to arbitrate claims for his wrongful death. *See id.* at 193-94. The court noted that the wrongful death beneficiary was not a party to the arbitration agreement and held that wrongful death claims were not required to be arbitrated, based upon *Ping* and its progeny. *See id.* at 197. The Sixth Circuit concluded that *Ping* was not preempted by the FAA because *Ping* did not disfavor arbitration agreements, but held that only the wrongful death beneficiaries had the right to limit any rights related to those claims. *See id.* at 197-201. In particular, the Sixth Circuit noted:

> Wrongful-death beneficiaries are thus no more or less bound by a decedent's agreement to arbitrate than they are by a decedent's waiver of certain claims, selection of a forum to litigate disputes, or selection of the law governing an agreement. To illustrate, suppose that a decedent and the long-term facility enter into an agreement in which the parties select a Kentucky state court as the forum to litigate the wrongful-death claim. Under *Ping*, the wrongful-death beneficiary is not bound by this forum-selection clause because the decedent never had an interest in the claim itself. And because the beneficiary is not bound by the clause, the beneficiary could very well elect to arbitrate the wrongful-death claim instead—so long as the long-term facility agrees. *Ping* is thus indifferent to arbitration.

13

*Id.* at 199.

In this case, the Court concludes that Janes' attorney-in-fact did not have the authority to waive any rights of the wrongful death beneficiaries under Kentucky law because those claims did not belong to Janes. *See id.*; *Pete*, 413 S.W.3d at 300. Accordingly, Plaintiffs are not entitled to compel arbitration regarding the wrongful death claim because Janes could not grant her attorney-in-fact powers beyond her control, such as the right to constrain the claims of her wrongful death beneficiaries. For this reason, the Court will grant the motion to dismiss and deny the motion to compel arbitration with respect to the wrongful death claim only.

### F.    Anti-Injunction Act

Finally, Smith argues that the Anti-Injunction Act prohibits this Court from enjoining the state court proceeding. (Def.'s Mem. Supp. Mot. Dismiss & Resp. Pl.'s Mot. Compel Arbitration 33-36). As this Court has previously noted, "a district court's injunction of state-court proceedings after compelling arbitration [does] not violate the Anti-Injunction Act." *Warner*, 2013 WL 6796421, at *10 (W.D. Ky. Dec. 19, 2013) (citing *Great Earth*, 288 F.3d 878, 893 (6th Cir. 2002)). The Anti-Injunction Act specifically excepts injunctions "necessary . . . to protect or effectuate [the district court's own] judgments." 28 U.S.C. § 2283. The Sixth Circuit has recognized that an order enjoining a parallel state court proceeding as part of an order compelling arbitration falls within this exception. *See Great Earth*, 288 F.3d at 893. Accordingly, this argument lacks merit, and the motion to dismiss will be denied on this basis.

### III.    CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** as follows:

1.    Plaintiffs' Motion to Compel Arbitration (DN 5) is **GRANTED IN PART** and **DENIED IN PART**. Defendant is **ENJOINED** from proceeding against Plaintiffs in the State

Court Action, except for the wrongful death claims. The parties to this action are **COMPELLED** to arbitrate all claims (except the wrongful death claims), which are the subject of the State Court Action. Counsel **SHALL** promptly notify the Green Circuit Court of this Memorandum Opinion and Order.

    2.    Defendant's Motion to Dismiss (DN 10) is **GRANTED IN PART** as to the wrongful death claim only and **DENIED IN PART** as to all other claims.

    3.    This case is **STAYED** until the conclusion of the ordered arbitration.

**Greg N. Stivers, Judge**
**United States District Court**
November 14, 2017

cc:    counsel of record